## CONDITT v. HOLCEK.
### No. 14845.

Court of Civil Appeals of Texas. Fort Worth.

May 23, 1947.

Rehearing Denied June 20, 1947.

296

Richard Owens, of Fort Worth, for appellant.

D. A. Webb and H. C. Ray, both of Fort Worth, for appellee.

HALL, Justice.

This is an OPA penalty case under provisions of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 901–925, and Maximum Price Regulations 540, as amended, wherein Sylvester Holcek, appellee, sued C. B. Conditt, and the partnership of Parsons and Matthews, in the 96th District Court of Tarrant County, Texas, and received a judgment based on jury findings, in the sum of $1,500.00, including attorneys fees, derived from an overcharge on the sale of an automobile.

Appellee alleged and proved that on January 8, 1946, he purchased a 1940 Chevrolet automobile from the defendants Parsons and Matthews, giving two checks therefor, $600.00 and $500.00 respectively, and a note for the sum of $136.20. He further alleged that all of the defendants participated in the sale and the profits derived therefrom, either directly or indirectly; that the particular sale in question was made in pursuance of a joint venture engaged in by all three of the defendants, and that each participated in the profits. He further alleged copartnership between the three parties, as well as a conspiracy to participate in the illegal profits; that he was not fully apprised as to the exact business agreement between the parties but that said facts were fully known to them and he called upon and requested them to produce, for use as evidence, their books and records reflecting the sale and transaction of the automobile in question.

The defendants Parsons and Matthews filed only a general denial.

The defendant C. B. Conditt filed a sworn denial of any partnership with Parsons and Matthews, further denying agency, association, or any interest in the business connection with the partnership of Parsons and Matthews.

From the adverse judgment of the trial court, C. B. Conditt alone perfects this appeal, alleging in point No. two that the trial court erred in overruling his motion for an instructed verdict, filed at the close of the evidence, based on the ground of insufficient evidence to connect him with the sale of the automobile.

Section 925, subdivision (e), 50 U.S.C.A. Appendix reads as follows: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge."

Section 942, Paragraph (h), 50 U.S.C.A. Appendix, reads: "The term 'person' includes an individual, corporation, partnership, association, or any other organized group of persons, or legal successor or representative of any of the foregoing."

Appellee's contention is that under the evidence all three of the defendants were associated together within the meaning of the above statute so as to render them jointly and severally liable for the overcharge. He cites such cases as Bowles v. Yankee Brewing Co., D.C., 62 F.Supp. 588, in which it was held that the president and director of a corporation was charged with the illegal sale made by the corporation, and therefore, individually responsible for the overcharge by being a legal representative thereof, and the case of Jung v. Bowles, 9 Cir., 152 F.2d 726, wherein it was held that the members of a partnership could not escape liability on the grounds that such liability rested on the partnership rather than on its individual members.

He also cites the case of United States v. Mutarielli, 3 Cir., 151 F.2d 925, wherein it was held that if a clerk was acting solely for his proprietor and upon proprietor's instructions, the proprietor was held responsible for such sale. Another case cited was Di Melia v. Bowles, 1 Cir., 148 F.2d 725, wherein it was held that an employee is chargeable for a violation of ration order, even though he had no knowledge thereof.

We have read all of these cases and do not find them to be in point on this case, for the reason we do not find evidence in this case which connects the defendant, C. B. Conditt, with the transaction in question; neither is there sufficient testimony to substantiate the finding of copartnership or business association between C. B. Conditt, and the sellers of the automobile.

Presuming all of appellee's evidence to be true, and rendering it the most favorable construction that it can properly bear; granting it all reasonable inferences which it raises, and leaving out all the contradictory evidence, we fail to find it supports a judgment in this case. The testimony of appellee relied upon to establish copartnership between appellant and the firm of Parsons and Matthews as well as to connect the appelant with the sale of the automobile is as follows: Appellee Holcek testified upon cross-examination as follows:

"Q. You have sued Mr. C. B. Conditt in this case. Did you ever talk with Mr. Conditt? A. No, sir.

"Q. Why are you suing him? A. Because the letter I got from Mr. H. R. York, stating he purchased my note from the Conditt Motor Co."

Both the note and the mortgage are made payable to Parsons and Matthews and do not show an endorsement of the appellant; the mortgage recites that the note is payable to the order of the parties of the second part at the office of H. R. York, in Fort Worth, Texas. Appellee introduced in evidence, over the strenuous objections of appellant, the following letter, which he, appellee, received from H. R. York:

"H. R. York
Loans & Investments
711–712 W. T. Waggoner Building
Fort Worth, Texas
January 12, 1946

Mr. Sylvester J. Holcek,
1501 Cooper St.,
Fort Worth, Texas.
Dear Sir:

We have purchased your car note from the Conditt Motor Company in the amount of $136.20; the same payable $22.70 a month. Your first payment is due February 8th.

We would appreciate your taking care of your payments promptly at due dates, also you are covered with fire, theft and $50.00 deductible collision insurance.

Yours very truly,
/s/ H. R. York
H. R. York"

HRY/mm

While resolving in appellee's favor every reasonable inference this letter reflects, we can only find that it established the fact that the note was at one time owned by appellant. We find, of course, the letter to be hearsay and inadmissible.

Other testimony which appellee relies upon to substantiate the judgment is the

undisputed fact that appellant, C. B. Conditt, cashed the two checks which Parsons and Matthews received from the sale of this automobile.

The facts show that appellant, Conditt, was in the loan business and had an office adjoining the lot from which the defendants Parsons and Matthews sold this car. The appellant testified that he was renting this lot to Parsons and Matthews and was floor-planning their automobiles, which was the usual and customary way to finance automobiles to dealers; that he had floor-planned the automobile in question, and out of the two checks cashed by him he was reimbursed for the amount for which he had floor-planned this automobile; that in floor-planning this automobile it was necessary to retain the title until the note against it was paid.

Appellee contends that appellant's failure to produce his records when called upon is an inference of evidence, sufficient along with other evidence in the case to maintain and support the judgment. We find that the testimony does not bear out the statement that appellant refused to produce his records.

The testimony merely shows that he did not produce his books. He was not called upon to produce them, except in appellee's pleadings. The testimony merely presents a presumption or inference which can never be made the basis of establishing a fact.

It is well-known rule of law that "a presumption of fact cannot rest upon a fact presumed, or in other words, one presumption cannot be based upon another presumption, nor an inference of fact upon other inferences". 17 Tex.Jur., page 247.

The evidence established in this case is based upon presumption and inference and is not sufficient to establish a fact issue by circumstances.

The evidence pertaining to appellant's failure to produce his books is as follows:

"Q. Hadn't you agreed that you would floor-plan their cars? A. I would floor-plan anything they would buy.

"Q. And you had an agreement as to the charges you would make for floor-planning? A. Yes sir, 1½% on each unit.

"Q. Per month? A. Yes sir.

"Q. Per month? A. Yes sir. In other words, they would draw a draft on me with the title attached, and when they delivered that car they would pay me for that automobile right there that 1½%. Now that is the agreement, if I can make it plain to you how I handled it. * * *

"Q. Now after you released the title to the car, is it your testimony that these checks are all of the records that you keep or have? A. Those?

"Q. Yes sir. A. These checks, sure, they are my record, my income record.

"Q. Are they the only records you have? Do you have any record at all in your office except tho · two checks there? A. Conditt Motor Company has a record.

"Q. They have a record? A. Yes.

"Q. Will they show how much they paid to you on this deal? A. I am sure they would.

"Q. Well don't you know? Sir? A. What is that now? What are you trying to do anyway?

"Q. I am trying to find out what kind of records you keep down there. A. I keep a true set of records for income, and I do it on a cash basis.

"Q. And that is the Conditt Motor Company but not you individually? A. Mine individually will show.

"Q. Will that record show how much you got? A. Conditt Motor Company did, at the time of the transaction, I am sure, give me a check personally to C. B. Conditt —I don't know, but I know it was kept true, and that is all I can say.

"Q. And you don't know what that record is? A. No.

"Q. Now you knew this case was coming up and you didn't even check the records so you could testify to the facts? A. I didn't have anything to do with the case. I only loaned them the money, and had a lot out there.

"Q. Well you knew you were being sued? A. Yes, but I didn't know what for.

"Q. And you didn't check your records so you could tell the jury what actually happened in it, is that your testimony, sir? A. That's right.

"Q. That's all."

 Since we have found that the evidence does not disclose any connection appellant had with the deal in question either as principal, agent, partner, copartner, or joint adventurer, it follows that the plaintiff failed to make out a cause of action against him.

In the case of Burns v. Heckle, Tex. Civ.App., 193 S.W.2d 983, 985, it was held that a person collecting and cashing checks was not an agent as contemplated in the act sufficient to maintain a cause of action. The court said in part as follows:

"The concluding fact finding reads:

"'That defendant * * * in her dealings with plaintiff, was not an agent of said Mrs. Audrey H. Andrews * * * as contemplated by the applicable statutes and regulations subjecting persons to damages for a violation of rent regulation statutes and orders.'

"Treating this last finding as a conclusion based upon the other found specific facts, we think it correct. We hold the agency contemplated by the act is one which authorizes participation in the unlawful act; or one wherein the agent, although lacking authority, actually participates therein. The facts bring Mrs. Heckle within neither of these categories. She had no part in making the contract or fixing the rental; no authority to alter or abrogate the contract or dispossess the tenant. Her only authority was to take the checks to the bank and deposit them to Mrs. Andrews' account. She was no more a participant in the unlawful overcharge than was the bank that cashed the checks and credited the proceeds to Mrs. Andrews' account."

The judgment of the trial court rendered against defendant C. B. Conditt, individually and doing business as Conditt Motor Company, is reversed and rendered. In all other respects, the judgment is left undisturbed.

The judgment of the trial court is reversed in part, and left undisturbed in part. Cost of this appeal taxed against appellee.